UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRADLEY T. PETERSON,

        Plaintiff,        Civil Action No. 16-10353
                                       Honorable Mark A. Goldsmith
v.                                            Magistrate Judge David R. Grand

DANIEL CLANTON, CITY
OF MONROE, MONROE
POLICE DEPARTMENT,
and COUNTY OF MONROE,

        Defendants.
_____/

### REPORT AND RECOMMENDATION TO GRANT COUNTY OF MONROE'S MOTION TO DISMISS [21]

Before the Court is a Motion to Dismiss filed by Defendant County of Monroe (the "County") on May 27, 2016. (Doc. #21). On June 20, 2016, *pro se* Plaintiff Bradley Peterson ("Peterson") filed a response this motion (Doc. #23), and the County filed a reply the next day (Doc. #24). An Order of Reference was entered on March 29, 2016, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b). (Doc. #12).

Having reviewed the pleadings and other papers on file, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that the County's Motion to Dismiss [**21**] be **GRANTED**.

## II.     REPORT

### A.     Background

This is a *pro se* civil rights action brought by Peterson against four defendants: Corporal Daniel Clanton, the City of Monroe, the Monroe Police Department, and the County of Monroe. (Doc. #1).  In his complaint, Peterson discusses his participation in a "civil protest" at the General George A. Custer statue in Monroe, Michigan, on September 11, 2015.  (*Id.* at 6). Peterson alleges that, among other things, he was protesting his previous treatment at the Monroe County Jail (in 2010) and by certain Monroe County officials after his release (in 2012), as well as this Court's resolution of his civil rights complaints related to those matters.  (*Id.*).[1] Specifically, Peterson asserts that, on September 11, 2015, he: (1) "extensively explained" to Corporal Clanton his alleged mistreatment by officers years earlier at the Monroe County Jail as well as his dissatisfaction with the manner in which his federal court litigation concerning those matters was resolved; (2) informed Corporal Clanton that the County "was singling him out in hatred, revenge, prejudices, and want to see him dead or harmed" and that "Monroe County is the ones who don't want to resolve 2010 and 2012 incidents"; and (3) further stated that "the County of Monroe authoritys [sic] are <u>cowards hiding behind fake oaths and bages</u> [sic]."[2] (*Id.* at 11-14 (emphasis in original)).

However, Peterson's complaint does not contain a single allegation of any alleged

---

[1] Previously, Peterson filed a lawsuit in this Court (Civil Action No. 12-11460) against the County of Monroe and its employees, alleging that Monroe County Jail officers used excessive force against him while he was being held there.  That lawsuit was dismissed in its entirety on the defendants' motion for summary judgment.  In 2014, Peterson brought a second civil action in this Court (Civil Action No. 14-12853) against the County, as well as certain of its employees related to alleged wrongful conduct they committed against Peterson after his release from jail. That action was dismissed by the Court as well.

[2] Peterson also alleges that he told Corporal Clanton that "Gen. George A. Custer <u>is</u> and <u>was</u> a <u>coward serial killer, terrorist, killing</u> innocent women, children, Native Indians" and that "he has [in his] family <u>five known</u> serial killers …."  (Doc. #1 at 12, 13 (emphasis in original)).

wrongdoing – or other involvement – committed specifically by the County in the September 11, 2015 incident; rather, Peterson asserts only that he related his complaints about alleged prior wrongdoing by the County to Corporal Clanton on that date, and that "Clanton, City of Monroe, the Monroe Police Department, the County of Monroe, gave <u>false</u>, <u>misleading lies</u> in 09-11-2015: incident reports made to single [Peterson] out in fraud, slander, defamation, and is a violation of his civil and constitutional rights to peacefully protest 2010 and 2012: incident of events, torture, assaults, injurys [sic], hatred, revenge, corruptions, prejudice, fraud, and discriminations." (*Id.* at 14).[3] Peterson admits in his complaint that he "was not arrested or sighted [sic] for any wrong doings or violations by the authoritys [sic] and captain of police did allow 2010 – 2012: incident of protests to continue at scene in front of Gen: George A. Custers [sic] statue." (*Id.*).

### B.   Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim

---

[3] Peterson attached to his complaint a copy of the Police Report prepared by Corporal Clanton regarding Peterson's conduct at the protest. This report begins by noting that the Monroe Police Department received a call about a male subject (later identified as Peterson) who appeared intent on igniting flags at the "Custer statue." Officers arrived and "quickly defused the situation." At some point, Peterson approached the officers and engaged in a dialogue with them. Peterson reportedly "displayed varying degrees of emotional instability, almost simultaneously praising law enforcement then without warning fervently opposing law enforcement." Peterson explained that his anger stemmed from his dissatisfaction with the result of his prior litigation in this Court described above. *See supra* fn. 1. According to Clanton, Peterson "swore to exact revenge and vilified intake/corrections officers." Clanton reported that he "strongly warned Peterson that terrorist threats on law enforcement personnel would be met with the full force and power of law enforcement should he attempt to carry out threats. Peterson backed off his aggressive statements and recomposed himself. Peterson then thanked [Clanton], shook [his] hand, removed the confederate flags [and] left on foot…" (Doc. #1 at 17).

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must accept the factual allegations in the complaint[4] as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds that it fails to comport sufficiently with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

---

[4] A reviewing court's consideration of a motion to dismiss under Rule 12(b)(6) is ordinarily confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir.2008). Thus, assessment of the complaint's facial sufficiency ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir.2007) (citing Fed. R. Civ. P. 10(c)); *see also Koubriti v. Convertino*, 593 F.3d 459, 463 n. 1 (6th Cir. 2010).

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

### C.   Analysis

In its motion, the County argues that Peterson's claims against it should be dismissed because his complaint contains no allegations of any wrongdoing by the County on the date in question. (Doc. #21). The Court agrees. As discussed above, Peterson alleges only that, on September 11, 2015, he advised Corporal Clanton of *previous* mistreatment he allegedly suffered in 2010 and/or, and that he was dissatisfied with the results of his previous lawsuits against the County. He does not allege that the County engaged in any specific wrongdoing on September 11, 2015.

The only allegation in Peterson's complaint which even mentions conduct allegedly committed by the County of Monroe is in Paragraph 33. In that paragraph, Peterson alleges, "Clanton, City of Monroe, the Monroe Police Department, the County of Monroe, gave <u>false</u>, <u>misleading</u> <u>lies</u> in 09-11-2015: incident reports made to single [Peterson] out in fraud, slander, defamation, and is a violation of his civil and constitutional rights to peacefully protest 2010 and 2012: incident of events, torture, assaults, injurys [sic], hatred, revenge, corruptions, prejudice, fraud, and discriminations." (*Id.* at 14). But, even considering Peterson's *pro se* status, this vague and conclusory allegation clearly does not withstanding the pleading requirements discussed above; among other deficiencies, it fails to identify a single untrue or misleading statement allegedly made by the County, and it fails to specify the County's involvement in, or

ratification of, any such statement. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555; *Howard*, 346 F. App'x at 51; *see, also e.g., Rodriguez v. Jabe*, 904 F.2d 708 (6th Cir. 1990) (finding dismissal proper where "the complaint contained no specific allegations" regarding particular defendants and, thus, was "without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").[5] This alone is grounds for granting the County's instant motion.

Moreover, the law is clear that a municipality may not be held vicariously liable for the actions of its employees under §1983. *See Connick v. Thompson*, 563 U.S. 51, 60-62, (2011); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, a municipality is liable only when its official policy or custom directly causes the plaintiff's injury. *Id.* Accordingly, "a plaintiff seeking to impose liability on a municipality under §1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 694). *See also Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (noting that under *Monell*, a plaintiff asserting a § 1983 claim "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom."). Therefore, for Peterson to state a §1983 "*Monell*" claim against the County, he must identify a specific policy of the County that "directly caused [him to suffer] a deprivation of federal rights." *Brown*, 520 U.S. at 415. To do so, Peterson must demonstrate one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy

---

[5] Peterson fares no better as a result of the allegations contained in his response brief. In that document, he merely rehashes the foregoing allegations, and makes vague and conclusory assertions that "Defendants have been investigating and provokeing [sic] violence and threatening [him] again in 9-11-2015." (Doc. #23 at 3-4). Again, this fails to specify any wrongful conduct committed by the County.

of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *See Burgess*, 735 F.3d at 478. For the same reasons noted in the preceding paragraphs, even construing his complaint liberally, Peterson does not allege any facts which would be required to state any such claims against the County. For this reason, the County's motion to dismiss should be granted.

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that the County's Motion to Dismiss [**21**] be **GRANTED** and Peterson's claims against the County be dismissed in their entirety and with prejudice.[6]

| | |
|---|---|
| Dated: July 27, 2016<br>Ann Arbor, Michigan | s/David R. Grand<br>DAVID R. GRAND<br>United States Magistrate Judge |

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and

---

[6] In its reply brief (Doc. #24 at 2), the County quotes Fed. R. Civ. P. 11(b)(1) and (2), which provide that when an attorney or unrepresented party (like Mr. Peterson) files a pleading, motion, or other paper with the Court, he is certifying that to the best of his belief: (1) it is not being presented for any improper purpose; and (2) the claims, defenses and contentions in the filing are warranted by existing law or by a nonfrivolous argument for extending, modifying, or revising existing law or for establishing new law. The County argues that this is "the second lawsuit that [Peterson] has attempted to re-litigate dead claims," and that each time he does so, the County is forced to incur unnecessary fees to defend itself. Accordingly, it asks the Court to take some step to prevent [Peterson] from continuing to present these claims" in the future. (*Id.* at 2-3). While it is appropriate to remind Peterson that he had a full opportunity to litigate his prior claims, as both the undersigned and District Judge Mark A. Goldsmith reviewed the evidence (including a jail video of the underlying incident) in great detail, and decided his claims on their merits, *see supra* fn. 1, no sanction against him is warranted. The County is correct that those particular claims are concluded, and cannot be re-raised by Peterson. However, although the "protest" which is the subject of Peterson's instant complaint arose out of his dissatisfaction with his treatment at the Monroe County Jail and the resolution of his related civil litigation, Peterson's instant claims do not seek to "re-litigate" those matters, as the County contends. Rather, Peterson's claims relate to the events which allegedly took place during his "protest." Accordingly, although the County showed that Peterson failed to adequately plead a claim against it related to that protest, no sanction against Peterson is warranted.

7

Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 27, 2016.

                                                s/Eddrey O. Butts
                                                EDDREY O. BUTTS
                                                Case Manager