UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRADLEY T. PETERSON,

                Plaintiff,                      Civil Action No. 16-CV-10353
                                             Honorable Mark A. Goldsmith
                                             Magistrate Judge David R. Grand

v.

CORPORAL DANIEL CLANTON,
CITY OF MONROE, MONROE
POLICE DEPARTMENT AND
COUNTY OF MONROE,

                Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [30]

       Before the Court is a Motion for Summary Judgment filed by Defendants Corporal Daniel Clanton ("Clanton"), City of Monroe (the "City"), and Monroe Police Department (the "Department"), (collectively, "Defendants")[1], on September 30, 2016.  (Doc. # 30).  On October 24, 2016, *pro se* Plaintiff Bradley Peterson ("Peterson") filed a response to this motion. (Doc. # 32), and Defendants filed a reply on November 10, 2016 (Doc. # 33).

       Having reviewed the pleadings and other papers on file, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

## I.      RECOMMENDATION

       For the reasons set forth below, **IT IS RECOMMENDED** that the Defendants' Motion for Summary Judgment **[30]** be **GRANTED**.

---

[1] The County of Monroe was terminated as a Defendant in this matter on February 22, 2017, when the Court granted its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. #34).

## II.     REPORT

### A.    Background

This *pro se* civil rights action centers around what Peterson describes as his participation in a "civil protest" at the General George A. Custer statute in Monroe, Michigan on September 11, 2015.  (Doc. # 1 at ¶5).  Peterson alleges that he was protesting (1) his treatment at the Monroe County Jail in 2010, (2) his treatment by several Monroe County officials following his release in 2012, and (3) this Court's resolution of his other civil rights actions related to those matters.  (*Id.*).[2]  According to Corporal Clanton's incident report, the Monroe Police Department received a call about a male subject – later identified as Peterson – who "seemed intent" on igniting confederate flags at the "Custer statue."  (Doc. # 30 at Ex. D).  Upon arriving at the scene, Clanton states that officers "defused the situation" and remained present at a nearby location to preserve civil order for the duration of Peterson's demonstration.  (*Id.*).

Peterson later approached the officers and initiated a conversation.  Both parties agree that Peterson shared details about his history with Monroe County and this Court's handling of his lawsuits.  Clanton's report states that Peterson became visibly agitated as he described the incidents, clenching his teeth and raising his voice as he spoke. (Doc. # 30 Ex. D).  According to Clanton, Peterson then "swore to exact revenge and vilified intake/corrections officers," refusing to explain his intentions other than to say that "many people would suffer."  (*Id.*).  Clanton alleges that he warned Peterson about the consequences of making "terroristic threats" against

---

[2] In 2012, Peterson filed a lawsuit in this Court (Civil Action No. 12-11460) against the County of Monroe and its employees, alleging that Monroe County Jail officers used excessive force against him during his incarceration.  The lawsuit was dismissed on the defendants' motion for summary judgment.  In 2014, Peterson brought a second civil action in this Court (Civil Action No. 14-12853) against the County, as well as certain employees, related to the alleged wrongful conduct committed against Peterson following his release.  That action was dismissed by the Court as well.

law enforcement, at which point Peterson "backed off his aggressive statements and recomposed himself." (*Id.*). Peterson denies this account in his complaint, stating that he "at <u>no time</u> <u>made</u> <u>threats</u> <u>of</u> <u>domestic</u> <u>terrorism</u> to [Clanton] or anyone." (Doc. # 1 at ¶32)(emphasis in original). Clanton states that the encounter ended when Peterson "thanked [Clanton], shook [his] hand, removed the confederate flags [and] left on foot . . ." (Doc. # 30 at Ex. D).

Peterson subsequently filed the instant action pursuant to 42 U.S.C. § 1983. While his complaint is somewhat difficult to decipher, the gist of his claim is that the Defendants singled him out with "false, misleading lies" for exercising his "constitutional right to peacefully protest." Peterson contends that Defendants "have a history of revenge, hatred, [and] assault" against him, and that this pattern continued on September 11, 2015 when Clanton erroneously labeled him a terrorist. Peterson claims that he had the right to engage in constitutionally protected activity without embarrassing, defamatory *ex post* harassment from law enforcement. Peterson's purported harm is limited to this retribution theory, as he admits that he was neither arrested nor cited for protesting, and admits that he voluntarily agreed to forego any flag burning. (*Id.* at ¶8, ¶34). While Peterson's precise legal claims are somewhat unclear, he appears to be asserting federal claims under the First and Fourteenth Amendments to the United States Constitution, as well as state law claims for defamation and fraud.

### B.  Standard

Summary judgment is proper if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could return a verdict in favor of the nonmoving party, and a fact is "material" if it has the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Viewing the evidence in a light most

favorable to the nonmoving party, the Court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). Once this occurs, the nonmoving party must counter with specific facts upon which a reasonable jury could find in its favor. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399 (6th Cir. 2010) (citing *Anderson*, 477 U.S. at 252). A mere scintilla of proof or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment. *Sierra Club v. ICG Hazard, LLC*, 781 F.3d 281, 284 (6th Cir. 2015). The Court is particularly mindful of granting summary judgment against a *pro se* litigant, and takes care to independently review of the record in the interest of justice.

### C. Analysis

In their motion for summary judgment, Defendants argue that Peterson failed to raise a material question of fact as to each of the claims asserted in his complaint. The City and the Department also argue that they are immune from suit. The Court addresses each of these arguments below, starting with Peterson's claims against Clanton.[3]

### 1. <u>First Amendment Retaliation</u>

As stated above, Peterson contends that the decision to exercise his "constitutional rights to peacefully protest" resulted in him erroneously being labeled a terrorist by Clanton's "false,

---

[3] Defendants also argue that they are entitled to qualified immunity. However, because the Court is recommending that their summary judgment motion be granted for the reasons discussed below, the Court need not consider the qualified immunity issue.

misleading lies" in his incident report.   Liberally reading Peterson's complaint, the Court construes Peterson to be asserting a First Amendment retaliation claim.

A prima facie case for First Amendment retaliation entails three elements: (1) the plaintiff participated in constitutionally protected activity; (2) the defendant took an adverse action against the plaintiff "likely to chill a person of ordinary firmness" from engaging in the protected conduct; and (3) there is a causal connection between elements one and two – that is, "that the adverse action was motivated at least in part by the plaintiff's protected conduct." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).   The analytical approach in these cases is "intensely context-driven," and while the elements remain constant between cases, "the underlying concepts that they signify will vary with the setting." *Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010).   For this reason, whether a statement is "protected" or an official's responsive action is "adverse" frequently turns on the particular facts of a case.   *Id.* (citing *Thaddeus-X*, 175 F.3d at 397).

### i.   Protected Conduct

To satisfy the first element, the plaintiff must have engaged in protected activity.   Clanton acknowledges Peterson's demonstration was protected expressive activity under the First Amendment.   Indeed, the protest occurred in a public forum and the subject matter of Peterson's speech was entitled to First Amendment protection.   Peterson therefore satisfies this element.

### ii.   Adverse Action

Peterson next bears the burden of demonstrating that he suffered an adverse action at the hands of Clanton.   In this context, an action is "adverse" if it would "chill or silence a person of ordinary firmness" from exercising the right at stake.   *Ctr. For Bio-Ethical Reform, Inc. v. City*

*of Springboro*, 477 F.3d 807, 822 (6th Cir. 2007) (citing *Thaddeus-X*, 175 F.3d at 397).  While the level of harassment needed to satisfy this standard is by no means stringent, *Holzemer*, 621 F.3d at 524, the plaintiff must prove more than a mere *de minimis* effect on protected activity to raise a cognizable constitutional claim.  *Thaddeus-X*, 175 F.3d at 396.

As explained above, Peterson alleges that Clanton made misleading defamatory statements about him in the incident report.  Defamatory statements "motivated in part by a person's exercise of First Amendment rights can be, but are not always, legally sufficient standing alone" to constitute an adverse action.  *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 726 (6th Cir. 2010).  The question here, then, is whether the allegedly false statements contained in Clanton's police report would chill a person of ordinary firmness from engaging in a public demonstration similar to Peterson's September 11, 2015 protest.

In *Fritz*, the Sixth Circuit recently considered instances in which unflattering statements standing alone amounted to an adverse action.  The court first looked to *Bloch v. Ribar*, 156 F.3d 673, 679-81 (6th Cir. 1998), where adverse action existed when "a sheriff [ ] used a press conference to publicize confidential and embarrassing details of the plaintiff's rape by an unknown assailant in retaliation for the victim's public criticism of the sheriff for failing to diligently investigate the crime."  The court then contrasted this finding with *Mezibov v. Allen*, 411 F.3d 712, 722-23 (6th Cir. 2005), a case in which "a prosecutor [made] statements to the press that a defense attorney was ineffective, looking for a show trial and that the client should ask for his money back."  Despite assuming the statements to be defamatory for analytical purposes, the *Mezibov* court nonetheless held the plaintiff had failed to satisfy this prong because generalized reputational harm and emotional anguish, absent more concrete evidence of injury, was not enough.

6

The same reasoning applies here.  Even accepting Peterson's contention that he did not make threats of domestic terrorism, the nature of Clanton's statement and the manner in which he communicated it do not rise to the level of an adverse action.  Unlike the sheriff's deliberate attempt to impugn the plaintiff's character to a large public audience in *Bloch*, the allegedly adverse action here was in a statement made in an incident report produced for internal informational purposes.  Peterson has presented no evidence that he suffered any specific harm as a result of Clanton's conduct, nor is there the slightest intimation that a person of ordinary firmness would be deterred from conducting a similar demonstration as a result of Clanton's actions.  Even viewed in a light most favorable to Peterson, these facts compel the conclusion that he failed to raise a material question of fact as to whether he suffered an adverse action as a result of the challenged conduct.  This finding alone warrants summary judgment in the Defendants' favor on this claim.

### iii.    Causal Connection

Even if the evidence revealed that Peterson suffered an adverse action, his retaliation claim would nonetheless fail because he presented no evidence that such adverse action was motivated at least in part by his protected speech.  In other words, Peterson fails the "causal connection" prong, as well.

This final element of a First Amendment retaliation claim puts the subjective motivation of the defendant at issue.  Here, Peterson was required to show the adverse action was taken at least in part because of his exercise of protected activity.  *Holzemer*, 621 F.3d at 525.  According to the Sixth Circuit, a "motivating factor . . . is one without which the action being challenged simply would not have been taken."  *Id*.  To survive summary judgment, Peterson must offer

enough evidence to raise the inference that Clanton's objection to his protest was a "motivating factor" in the purportedly false incident report.

Turning to Clanton's motive, it is important to consider that retaliatory intent will rarely be proven using direct evidence alone. *See Holzemer*, 621 F.3d at 525. Thus, "[c]ircumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals," is appropriate to consider when assessing motive. *Thaddeus-X*, 175 F.3d at 399. The Sixth Circuit instructs that particularly compelling circumstantial evidence may suffice to raise an inference of retaliatory intent. *Holzemer*, 621 F.3d at 525-26; *see also Kennedy v. City of Villa Hills*, 635 F.3d 210, 218 (6th Cir. 2011); *Bloch*, 156 F.3d at 682. For example, close temporal proximity between the protected conduct and adverse action may be enough. *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (citing *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004).

However, when other evidence of retaliatory motive is lacking, the Sixth Circuit has been reluctant to hold that temporal proximity alone is sufficient to demonstrate causation. *Holzemer*, 621 F.3d at 526 (citing *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001)); *see also Coleman v. Bowerman*, 474 Fed.Appx. 435, 437 (6th Cir. 2012). "In analyzing the facts in temporal proximity cases, [courts] have always looked at the totality of the circumstances to determine whether an inference of retaliatory motive could be drawn." *Holzemer*, 621 F.3d at 526 (quoting *Vereecke*, 609 F.3d at 401). The Sixth Circuit has summarized the law on this issue "as recognizing the possibility that, on a particular set of facts, extremely close temporal proximity could permit an inference of retaliatory motive, but also recognizing that often evidence in addition to temporal proximity is required" for the inference to be drawn. *Vereecke*, 609 F.3d at 401.

Here, Clanton wrote the allegedly false statements in his incident report immediately following Peterson's protected demonstration.   But this fact is as predictable as it is unpersuasive.  It is unremarkable that a police officer would memorialize an incident in writing soon after it took place.  As stated above, while temporal proximity alone may be sufficient for a jury to draw the necessary inference in some circumstances, this is generally only when the proximity is revealing of some wrongful intent and this inference is supported by other circumstantial or direct evidence.   Peterson offers no such corroborating evidence here. Consequently, Peterson has failed to raise a material question of fact that retaliation for protected conduct was a motivating factor behind the alleged adverse action, thus entitling Clanton to summary judgment on this claim.

2.  **Fourteenth Amendment Equal Protection**

Peterson next asserts a claim under the Equal Protection Clause of the Fourteenth Amendment.  Clanton contends he is entitled to summary judgment on this claim because the record does not establish any degree of differential treatment between Peterson and others similarly situated.  Because Peterson failed to raise a genuine issue of material fact on both essential elements of an equal protection claim, the Court agrees.

The Equal Protection Clause forbids a state from denying "to any person within its jurisdiction the equal protection of the laws," U.S. Const. amend. XIV, § 1, and enshrines the ideal that "all living persons similarly situated should be treated alike."  *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  The purpose of the equal protection clause is to protect every person against intentional or arbitrary discrimination by government, "whether occasioned by express terms of a statute" or the improper conduct of government agents.

*Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005) (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923) (internal quotation marks and citation omitted)).

The Supreme Court has recognized that a "class of one" may bring an equal protection claim. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In such cases, the plaintiff contends that the state treated him differently from others similarly situated and that there is no rational basis for the difference in treatment. *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 864 (6th Cir. 2012). Applying this framework in the summary judgment context, the Court considers whether the relevant evidence, when applied to both material elements and viewed in the light most favorable to Peterson, would permit a reasonable jury to conclude that he was treated differently than others similarly situated and, if so, that Clanton lacked a rational basis for the disparity.

"Similarly situated" is a term of art, and the parties must be similar in all "relevant respects." *Paterek*, 801 F.3d at 650. In resolving whether parties are similar, courts do not demand exact correlation, but instead look for "relevant similarity." *EJS Properties*, 698 F.3d at 864-65. As for rational basis, a plaintiff establishes a lack of a rational basis by (1) negating every conceivable basis which might support the government action, or (2) demonstrating that the challenged government action was motivated by animus or ill-will. *Id.* Here, the evidence would not permit a reasonable jury to find for Peterson on either point.

i.      *Disparate Treatment*

First, the record offers no factual support to suggest Clanton treated Peterson differently than others similarly situated. Importantly, Peterson's complaint focuses almost exclusively on agents of Monroe County, *not* Clanton in particular, in suggesting a pattern of unfair, disparate

10

treatment.[4]  As noted previously, Peterson apparently believes that Clanton's conduct is simply further evidence of him being targeted by law enforcement in Monroe County.  But Peterson conflates the source of his alleged problems; with respect to the instant claim, it is Clanton's conduct that is relevant to Peterson's arbitrary targeting theory.

Peterson's evidence also fails to raise a triable issue because the record is silent on any others similarly situated to Peterson that have been treated differently.  Indeed, Peterson offers not even a single instance of another protestor receiving different treatment by Clanton.  Failing to show either a persuasive pattern of repeated targeting by law enforcement or any evidence suggesting other individuals similar to Peterson in all relevant aspects have received more favorable treatment, Peterson has not raised a genuine dispute on the first essential showing of his "class of one" equal protection claim.  Accordingly, summary judgment for Clanton is appropriate on this claim.

### 3.  <u>Defamation</u>

Peterson also raises a defamation claim under state law.  Defendants argue that since summary judgment is proper with respect to Peterson's federal claims, the Court should decline to exercise supplemental jurisdiction over Peterson's state law claim.   (Doc. # 30 at 6).  However, because the state and federal issues in this case arise from the same nucleus of operative facts and require overlapping analysis, and in the interests of judicial economy, it is appropriate to consider Peterson's state law claim.[5]

---

[4] The factual contentions pertaining to Monroe County are irrelevant as the County was recently terminated as a party in this matter and because the County's alleged animus towards Peterson is immaterial to resolving Peterson's equal protection claim against Defendants here.

[5] Federal courts have jurisdiction over state law claims that "are so related to claims in the action within the original jurisdiction that they form part of the same case or controversy . . ."  28 U.S.C. § 1367(a).   District courts retain broad discretion in deciding whether to exercise

Under Michigan law, a defamation claim entails four essential showings: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm (defamation *per se*) or the existence of special harm caused by publication. *Gilliam v. Ordiway*, 147 F.Supp.3d 664, 668 (E.D. Mich. 2015) (quoting *Mitan v. Campbell*, 474 Mich. 21, 706 N.W.2d 420, 421 (2005)).  Peterson fails to offer evidentiary support sufficient to raise a genuine dispute on multiple essential elements.

Briefly addressing each element in turn, Peterson potentially may potentially raise a triable question under the first prong by refuting that he ever made "terroristic threats" to Clanton.  However, Peterson fails to set forth a triable question as to the other elements.  First, an officer's internal incident report created for informational purposes, and not communicated to the public, can hardly be characterized as an "unprivileged communication to a third party."[6] Second, for the reasons discussed above, Peterson also fails to make a sufficient showing that he suffered any actionable harm caused by Clanton's completion of the incident report.  Consequently, Clanton is entitled to summary judgment on Peterson's state law defamation claim.

---

supplemental jurisdiction. *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010). Whether to retain jurisdiction over state-law claims depends on several factors, including "the values of judicial economy, convenience, fairness, and comity."  *Id.* (internal citation omitted). These factors favor considering Peterson's state law claim.  The Court is recommending that summary judgment be granted on each of Peterson's federal claims, including his First Amendment retaliation claim which is largely intertwined with his defamation claim.  Moreover, the parties have completed discovery, and the undersigned is familiar with the facts and background of this case.  *Gamel*, 625 F.3d at 952 (citing *Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195 (6th Cir. 2004)).

[6] Clanton's incident report may well be a privileged communication under the law.  *See, e.g., Couch v. Schultz*, 193 Mich.App. 292, 294 (1992) (finding a prison misconduct report written by a corrections officer to be a privileged communication because it was made in relation to a conduct hearing).  Moreover, Peterson failed to present any evidence that the internal report was actually communicated to any outside third party.

### 4. <u>Fraud</u>

To the extent Peterson is asserting a state law fraud claim against Clanton, that claim fails as well. "A claim of fraud under Michigan law requires the following elements: (1) that the defendant made a misrepresentation; (2) that it was false; (3) that defendant knew at the time of making the statement that it was false or was reckless with regard to knowledge of the truth; (4) that defendant made it with the intention that plaintiff would rely on it; (5) that plaintiff did rely and act on the misrepresentation; and (6) that plaintiff suffered injury as a result." *Dixon v. Wells Fargo Bank*, N.A., No. 12-10174, 2012 WL 4450502, at *5 (E.D. Mich. Sept. 25, 2012) (citing *Hi–Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 247 N.W.2d 813 (1976)). Here, for the reasons explained above, even if Peterson could show falsity and ill-intent, he presented no evidence whatsoever that he suffered a cognizable injury as a result of the challenged conduct. This alone is grounds for granting Clanton's summary judgment motion on this claim.[7]

### 5. <u>Municipal Liability</u>

The Department and City are each entitled to summary judgment on the federal and state claims Peterson asserts against them. As an initial matter, the Department is entitled to summary judgment on Peterson's federal claims because the law is clear that "a police department is not a legal entity capable of being sued in a 42 U.S.C. § 1983 action." *Rogers v. City of Hazel Park Police Dep't*, No. CV 16-10535, 2016 WL 6768646, at *2 (E.D. Mich. Sept. 14, 2016), report and recommendation adopted, No. 16-10535, 2016 WL 6090827 (E.D. Mich. Oct. 19, 2016) (citing *Boykin v. Van Buren Twp.*, 479 F.3d 444, 450 (6th Cir. 2007); *Laise v. City of Utica*, 970 F. Supp. 605, 608 (E.D. Mich. 1997) (a city police department is merely an agency of the city,

---

[7] Nor has Peterson shown that he acted (or refrained from acting) in any particular way as a result of the alleged fraudulent statement.

13

not a legal entity, and therefore is not a proper defendant in a § 1983 lawsuit)."  Because "[a] suit against a city police department in Michigan is one against the city itself," *id.* (citing *Haverstick Enterprises, Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 992, n.1 (6th Cir. 1994)), any state claims against the Department are appropriately considered under the standards applicable to the City.

In turn, the City is immune from such claims in this case pursuant to Michigan's Government Tort Liability Act, M.C.L. 691.1407(1), which provides, "Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function."   M.C.L. § 691.1407(1).   The Act defines a "governmental function" as "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law."  M.C.L. 691.1401(f).  This includes "[t]he authority of the city's police officers to 'pursue, arrest and detain' those suspected of violating the laws of Michigan."  *Payton v. City of Detroit*, 211 Mich. App. 375, 392 (1995).  "There is no 'intentional tort' exception to governmental immunity."  *Smith v. Dep't of Pub. Health*, 428 Mich. 540, 544, 410 N.W.2d 749, 751 (1987).  It is the plaintiff's burden of bringing forth evidence that such immunity does not exist in the particular case, which generally requires him to show that a statutory exception applies or that the challenged conduct took place in connection with a nongovernmental function.  *Seales v. City of Detroit*, No. 12-CV-11679, 2017 WL 24868, at *7 (E.D. Mich. Jan. 3, 2017) (citing *McCann v. Michigan*, 398 Mich. 65, 77, 247 N.W.2d 521 (1976)).

Here, Peterson has failed to raise a material question that Clanton, during the events in question, was doing anything other than routine and proper policing.  Clanton was policing in public and observed a protest which involved a potentially dangerous situation.  The undisputed evidence is that he diffused the situation and filed an internal Police Department incident report

regarding the events as he observed them.  Accordingly, Clanton was performing a government function, and the City and Department are immune from liability on Peterson's state claims under M.C.L. § 691.1407(1).

Summary judgment in the City's favor is also proper as to Peterson's federal claims. Because the Court finds that Clanton committed no constitutional violation and has no liability to Peterson, neither can the City be liable to him on his federal claims.  *Ryan v. City of Detroit*, No. 11-CV-10900, 2015 WL 1345280, at *8 (E.D. Mich. Mar. 25, 2015) (citing *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 900 (6th Cir.2004) (a municipality "cannot be liable under § 1983 absent an underlying constitutional violation by its officers.").  A municipality may not be held vicariously liable for the actions of its employees under § 1983; it can be liable only when its official policy or custom directly causes the plaintiff's injury.  *See Connick v. Thompson*, 563 U.S. 51, 60-62, (2011); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Accordingly, "a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 694).  *See also Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (noting that under *Monell*, a plaintiff asserting a § 1983 claim "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom").  Here, because Peterson has presented no evidence of such a custom or policy, the City is entitled to summary judgment on his federal claims.

### D.  Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Defendants' motion for summary judgment **(Doc. #30)** be **GRANTED**.

Dated: April 24, 2017                              s/David R. Grand
Ann Arbor, Michigan                               DAVID R. GRAND
                                                  United States Magistrate Judge


## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 24, 2017.


                                                  s/Eddrey O. Butts
                                                  EDDREY O. BUTTS
                                                  Case Manager